IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: U-HAUL CO. OF WEST VIRGINIA,

        Debtor.

AMANDA FERRELL, et al.,

        Appellants,

v.                                  CIVIL ACTION NO. 2:21-cv-00670

U-HAUL CO. OF WEST VIRGINIA,

        Appellee.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Appellee's *Motion to Dismiss Appeal as Moot* (Document 17), the *Memorandum in Support of Motion to Dismiss Appeal* (Document 18), and U-Haul International, Inc.'s ("UHI") *Joinder to Appellant U-Haul Co. of West Virginia's Motion to Dismiss Appeal* (Document 19), wherein the Appellee, joined by UHI, seeks dismissal of the Appellants' appeal under the doctrine of equitable mootness. The Court has also reviewed the *Appellants' Response to Motions to Dismiss Appeal as Moot* (Document 22), the *Reply of U-Haul Co. of West Virginia in Support of Motion to Dismiss Appeal* (Document 24), and UHI's *Joinder to Reply of U-Haul Co. of West Virginia in Support of Motion to Dismiss Appeal* (Document 25). For the reasons stated herein, the Court finds that the motion to dismiss should be granted, and the appeal should be dismissed as equitably moot.

# FACTUAL AND PROCEDURAL BACKGROUND

This motion to dismiss, and the underlying appeal, stem from a proceeding in the Bankruptcy Court concluding with a *Memorandum Opinion and Order* (Document 1-4) issued on December 10, 2021, barring the Appellants' claim, and the subsequent *Order Confirming Second Amended Plan of Reorganization, Dated August 23, 2021* (Document 1-1). The Debtor, U-Haul Co. of West Virginia, Inc., operates rental centers throughout West Virginia and contracts with independent U-Haul Dealers. The company rents equipment, leases and manages storage facilities, and sells related products. U-Haul International, Inc. ("UHI") is the Debtor's sole shareholder. On June 16, 2021, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code. UHI filed a proof of claim in excess of $120,000,000.

The Appellants, Amanda Ferrell, John Stigall, Misty Evans, and Certified Class of Claimants (collectively, the "Ferrell Class"), were customers of the Debtor, who originally filed a Class Action Complaint against the Debtor in Kanawha County, West Virginia, in 2011.

On August 23, 2021, the Debtor filed its Plan providing for the auction sale of the equity in the debtor to the highest bidder. UHI made a bid of $2,500,000 and no other parties made a higher bid. Under the Plan, the UHI payment is the sole source of funding for most payments to creditors. Additionally, pursuant to the Plan, UHI agreed to release its unsecured claim of $120,563,962 against the debtor.

The Ferrell Class, due to purported technical challenges by attorneys, submitted its proof of claim after the established deadline.[1] The claim alleged fraud through improper concealment

---

1 The timing of this filing and its reasoning are notably significant to a substantive question raised by the Appellants on appeal. However, for purposes of this statement of facts and opinion, the Court does not consider or resolve the competing arguments regarding the delayed filing, the Bankruptcy Court's findings related to that delay, and the consequences of those findings. Rather, its inclusion is merely to present a complete factual history.

and charging of fees to customers. The Ferrell Class claim asserted actual damages of $644,566 and statutory damages of $53,353,400 based upon 266,767 transactions allegedly involving fraudulent misrepresentations under the West Virginia Consumer Credit and Protection Act. The Debtor and UHI objected to the Ferrell Class Claim as untimely. With the Debtor and UHI's objection pending, the Ferrell Class submitted an objection to the proposed Plan.

After briefing and hearings, on December 10, 2021, the Bankruptcy Court entered its *Memorandum Opinion and Order* (Document 1-4) denying the Ferrell Class motion to enlarge the time to file its proof of claim and denying its standing as a party in interest. Therefore, the Ferrell Class was barred from the ultimate confirmation hearing and its objection to the Plan was disallowed.

On December 17, 2021, the Bankruptcy Court held a confirmation hearing on the Second Amended Plan of Reorganization. On December 21, 2022, the Bankruptcy Court issued its *Order Confirming Second Amended Plan of Reorganization, Dated August 23, 2021* (Document 1-1). On December 22, 2022, the Debtor and UHI commenced the $2,500,000 payment transfer, cancellation of existing stock, and the issuance of new stock.

The Appellants did not seek a stay of the Bankruptcy Court's orders. However, the Appellants filed a *Notice of Appeal and Statement of Election* (Document 1) on December 24, 2021. Beginning on January 4, 2022, and concluding on January 24, 2022, the Debtor commenced and completed payments to 108 creditors.

The *Appellants' Brief* (Document 14) raised three issues on appeal, arguing that the Bankruptcy Court (1) abused its discretion in applying the excusable neglect standard when it barred the Appellant's proof of claim; (2) erred by finding that the Ferrell Class was not a party in

interest and therefore lacked standing to object to the Plan; and (3) erred by confirming the *Second Amended Plan* which released their alter ego claims against UHI. Prior to filing its responsive brief, the Appellees moved to dismiss the complaint as equitably moot.[2] In response, the Appellants argued against a finding of equitable mootness, argued for a full review on the merits, and asserted that the Court could appropriately fashion equitable relief to avoid disrupting the success of the Plan.

## DISCUSSION

The doctrine of equitable mootness in the bankruptcy context is, of course, an equitable doctrine that promotes the core principle of finality in bankruptcy and protects against decisions that would unreasonably and/or unfairly disturb a bankruptcy order under certain circumstances. The doctrine serves as a pragmatic principle to avoid reversing a judgment when effective relief would be "impractical, imprudent, and therefore inequitable." *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). "Because the doctrine of equitable mootness is based on practicality and prudence, its application does not employ rigid rules. Rather a court must determine whether judicial relief on appeal can, as a pragmatic matter, be granted." *Id.*

The Fourth Circuit has articulated a number of factors to determine appropriate application of the doctrine, including: "(1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would

---

[2] The Parties subsequently filed additional briefing on the merits of the Appellants' appeal. However, because the Court is reviewing the threshold matter of whether to dismiss the appeal as equitably moot, the Court does not detail the competing arguments related to substantive issues raised on appeal.

4

affect the interests of third parties." *Mac Panel Co.*, 283 F.3d at 625. No single factor is dispositive, and courts must consider a totality of the circumstances. *Id*.

Here, the Appellees argue that the factors support dismissal of the appeal under the doctrine. They argue that the Appellants never sought a stay pending appeal, that the Plan was substantially consummated, that the requested relief would undermine the success of the approved Plan, and that the requested relief on appeal would unfairly impact third-party interests. The Appellants do not contest their failure to seek a stay but argue that alone is insufficient to justify a finding of mootness. Further, they argue that the Court can fashion appropriate equitable relief that would not undermine the Plan or negatively impact third parties. Finally, they argue that while the Plan certainly was substantially completed, the completion was essentially a tactical maneuver used to undermine the ability to appeal the Plan, and that the equities favor a decision on the merits.

While it is true that termination of the appeal as equitably moot is a harsh remedy, and decisions on the merits are typically preferred, given the nature of the Plan, and the relevant factors, the equities weigh in favor of a finding of equitable mootness.

First, while the Appellants are correct that the failure to seek a stay is not dispositive, it is certainly a notable factor which allowed for the Plan to take effect expeditiously and thus make it more difficult to unwind. *See In re U.S. Airways Group, Inc.*, 369 F.3d 806, 809-10 (4th Cir. 2004). Not only did they not seek a stay in the Bankruptcy Court, but the Appellants did not seek any other emergency relief to freeze the Plan to facilitate raising their concerns. This failure, while not dispositive, weighs heavily against the Appellants because they failed to utilize a readily accessible tool which could have allowed for consideration of the merits prior to, or soon after, the consummation of the Plan.

Additionally, the Plan has been substantially consummated. Substantial consummation occurs following:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. §1101(2).[3]  Here, it is undisputed that these steps have occurred. Shortly after the Plan was approved, the property proposed by the Plan was fully transferred, old stock was terminated, new stocks were distributed, and creditors were paid.  While the Appellants argue that the pace with which this was carried out was essentially a bad faith effort to moot the appeal, the Appellees correctly note that the approved Plan necessitated this expeditious consummation, requiring that the Plan would be consummated and carried out on the effective date of the Plan or as soon thereafter as practicable. The Appellants may certainly view this provision as objectionable, but the Appellees' compliance with the court approved conditions of the Plan does not constitute improper behavior.  Rather, ignoring the obligations of the approved Plan would have been improper.  Further, as noted above, the Appellants made no effort to halt the consummation, or achieve expeditious review of their objections in the immediate aftermath of the Bankruptcy Court's opinion(s).  This failure undermines the persuasiveness of complaints of unfairness from the rapid consummation of the Plan.

---

3 It is true that the Fourth Circuit has recognized that substantial consummation does not in and of itself render a case "immune from appellate review." *Central States Se. & Sw. Areas Pension Fund v. Central Transport Inc.*, 841 F.2d 92, 96 (4th Cir. 1988) (citing *In re AOV Indus., Inc.*, 792 F.2d 1140, 1148-50 (D.C. Cir. 1986).  However, substantial consummation is yet another factor which weighs against disturbance of the plan and in favor of a finding of mootness.

Third, the relief requested would unquestionably undermine the success of the approved Plan. While UHI's conditions for approval of the Plan had significant and detailed contingencies that essentially made their agreement conditional on the Plan going into effect precisely as drafted, the Bankruptcy Court considered this and approved the Plan. To now grant relief as requested, even the more limited equitable relief as proposed, would alter essential components of the agreement approved by the Bankruptcy Court. UHI's position that its support for the Plan being adopted, as written, is not new. Rather, this condition has been explicitly a part of the consideration since UHI's entry into the proceedings. Further, the lack of other bids, during the Bankruptcy process, highlights the significant consequences of unraveling the Plan in its entirety. This again weighs in favor of equitable mootness, as the parties made clear to the Bankruptcy Court and again to this Court that alterations to the Plan would threaten the Plan itself. The Court acknowledges that the agreement, at issue, was stringent in that acceptance by UHI was conditioned upon there being no modification adverse to the interests, rights or treatment of UHI. However, this particular factor of the equitable mootness doctrine simply asks whether the adopted Plan would be undermined by the relief requested. Based on the record before the Court, the answer to that question is undoubtedly yes.

Finally, the relief requested would negatively impact the interests of third parties. As discussed above, creditors were fully paid, and the Debtor continued to operate in this new financial reality. Therefore, by placing the full Plan at risk, the requested relief would result in substantial collateral consequences for creditors who would potentially face claw backs, and for other third parties who have since engaged with the Debtor. Thus, third parties who are not before this Court would face unknown harms, costs, disruptions, and even potential litigation, because of

7

the disruption to the Plan. This foreseeable hardship appears to be precisely the type of hardship to third parties which the equitable mootness doctrine seeks to avoid.

Therefore, because each individual *Mac Panel Co.* factor and a totality of the circumstances favor a finding of equitable mootness, the Court concludes that application of the doctrine is appropriate. Of course, this conclusion is not reached hastily or lightly, given the harsh consequences. However, because the doctrine appears geared to preserve approved and consummated plans under precisely the conditions presented here, its application is warranted. Accordingly, the Appellees' motion should be granted, and the appeal should be terminated as equitably moot.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Dismiss Appeal as Moot* (Document 17) be **GRANTED**, and, accordingly, that the *Notice of Appeal and Statement of Election* (Document 1) be **TERMINATED AS MOOT** and this matter be removed from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 26, 2022

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA